**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

RICHEMONT INTERNATIONAL S.A.,

               Plaintiff,

               v.

█████████████

               Defendant.

No. 25-cv-02322

DEMAND FOR JURY TRIAL

**AMENDED COMPLAINT**

Richemont International S.A., ("Plaintiff") by and through its undersigned counsel, hereby files this Complaint for trademark infringement under the Lanham Act, false designation of origin, and violations of the Illinois Uniform Deceptive Trade Practices Act, against defendant █████████████ ("Defendant"). In support hereof, Plaintiff states as follows:

## I.      JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant, since Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of at least a fully interactive, commercial internet store operating under Defendant Internet Store ████████ (Merchant ID: ███████████) on ██████.

1

Specifically, Defendant directly reaches out to do business with Illinois residents by operating or assisting in the operation of at least one commercial, interactive e-commerce store that sells products infringing Plaintiff's federally registered trademark and trade dress directly to Illinois consumers. In short, Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II.    INTRODUCTION

3.    Plaintiff filed this action to combat an online counterfeiter who trades upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products using counterfeit versions of Plaintiff's federally registered trademark LOVE BRACELET (Reg. No. 1,005,286) and trade dress (Reg.No. 1,372,423). *See* **Exhibit 1**. Like many other intellectual property right owners, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of infringers, such as Defendant herein. Defendant created at least one Internet store (the "Defendant Internet Store" or the "Store") on ▮▮▮▮ with the Merchant ID ▮▮▮▮▮▮▮▮ and designed it to appear to be selling genuine copies of Plaintiff's branded products when in fact the Store is selling counterfeit versions of Plaintiff's branded products to unknowing customers.

4.    Plaintiff has been forced to file this action to combat Defendant's willful infringement of Plaintiff's trademarks and to protect unknowing consumers from purchasing inferior knockoff products over the Internet. Because of Defendant's actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions. Accordingly, Plaintiff seeks injunctive and monetary relief.

---

2

### III. THE PARTIES

### A. Plaintiff Richemont International S.A.

5. Plaintiff is a public limited company organized and existing under the laws of Switzerland and has its principal place of business at Chemin de la Chênaie 50, 1293 Bellevue, Switzerland. Plaintiff is a global leader in the luxury goods industry, overseeing a prestigious portfolio of internationally renowned Maisons specializing in fine jewelry, watches, fashion, and accessories. Founded in 1988, Plaintiff is known for its commitment to exceptional craftsmanship, heritage, and innovation. Richemont's brands, including Cartier, Van Cleef & Arpels, and Montblanc, among others, are celebrated worldwide for their artistry and dedication to creating timeless luxury products. Among these, LOVE BRACELET branded products ("LOVE BRACELET Products") stand out as a hallmark of Richemont's dedication to excellence.

6. Among Plaintiff's most important assets is the intellectual property associated with its LOVE BRACELET brand. Specifically, Plaintiff owns U.S. trademark registrations used to identify the luxury goods that it markets and sells under its LOVE BRACELET brand.

7. Genuine LOVE BRACELET-branded products are sold through its website[2], authorized retail channels such as Harrods and Macy's, a worldwide network of boutiques, as well as tightly controlled distribution partnerships, and are recognized by the public as being exclusively associated with Plaintiff. LOVE BRACELET Products are regularly featured in national and international media as luxury and innovative products for anyone looking for timeless elegance, exceptional craftsmanship, and sophisticated style. The genuine products have been positively reviewed at exhibitions, on social media, and in magazines.

---

[2] https://www.cartier.com/en-us/home

8. Plaintiff incorporates a variety of distinctive marks in the design of its various LOVE BRACELET Products. As a result of its long-standing use, Plaintiff has established common law trademarks in these marks. It has also registered the following trademarks ("LOVE BRACELET Trademarks") with the United States Patent and Trademark Office, and uses it in connection with the advertisement, design, distribution, offer for sale, and sale of its LOVE BRACELET Products.

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 1,005,286 | LOVE BRACELET | Feb. 25, 1975 | For: JEWELRY-NAMELY, BRACELETS in **class 014** |
| 1,372,423 | | Nov. 26, 1985 | For: BRACELETS in **class 014** |

9. The registrations for the LOVE BRACELET Trademarks constitute prima facie evidence of its validity and of Plaintiff's exclusive right to use the LOVE BRACELET Trademarks pursuant to 15 U.S.C. § 1057(b). The LOVE BRACELET Trademarks have been used continuously by Plaintiff, its predecessors-in-interest, and associated entities in the United States for decades and have never been abandoned since the first use. The LOVE BRACELET Trademarks are famous throughout the United States and the world.

10. The LOVE BRACELET Trademarks are exclusive to Plaintiff and are displayed extensively on LOVE BRACELET Products as well as in Plaintiff's marketing and promotion materials. LOVE BRACELET Trademarks are distinctive when applied to the LOVE BRACELET Products, signifying to the purchaser that the products come from Plaintiff and are manufactured

to Plaintiff's exacting quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff ensures that products bearing its trademarks are manufactured to the highest quality standard.

11. The above U.S. registrations for the LOVE BRACELET Trademarks are valid, subsisting, in full force and effect, and are currently in use in connection with LOVE BRACELET Products. True and correct copies of the U.S. Registration Certificates for the above-listed trademarks are attached hereto as **Exhibit 1**.

12. Plaintiff is engaged in the business of distributing and retailing high-quality LOVE BRACELET Products within the Northern District of Illinois under its federally registered trademarks. Plaintiff spends millions of dollars in marketing, advertising, and otherwise promoting LOVE BRACELET Products. Products bearing the LOVE BRACELET Trademarks have become among the most popular of their kind in the United States and the world. The LOVE BRACELET brand and products have also been the subject of extensive unsolicited publicity resulting from its exceptional quality, innovative designs, and renown as desired luxury items. LOVE BRACELET Trademarks have achieved tremendous fame and recognition, which has only added to the inherent or acquired distinctiveness of the marks. As such, the goodwill associated with the LOVE BRACELET Trademarks is of incalculable and inestimable value to Plaintiff.

**Defendant**

13. Defendant is an individual or entity of unknown makeup that owns and/or operates at least the Seller Alias and/or other seller aliases not yet known to Plaintiff. Upon information and belief, Defendant resides in the People's Republic of China. Defendant conducts business throughout the United States, including within the State of Illinois and in this Judicial District, through the operation of at least one fully interactive Defendant Internet Store. Defendant targets

5

the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and in this Judicial District.

14. Defendant knowingly and willfully manufactures, imports, distributes, offers for sale, and sells infringing products. The tactics used by Defendant to conceal its identity and the full scope of its operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of its infringing network. If Defendant provides additional credible information regarding its identity, Plaintiff will take appropriate steps to amend this Complaint.

## IV.     DEFENDANT'S UNLAWFUL CONDUCT

15. The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Consequently, Plaintiff has identified numerous marketplace listings on e-commerce platforms such as, but not limited to, Amazon, which hosts internet stores that has been offering for sale, completing sales, or shipping illegal products to consumers in this Judicial District and throughout the United States. E-commerce stores like Defendant Internet Store have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizures, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo

6

environment occurred in the de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

16.     E-commerce store operators like Defendant maintain off-shore bank accounts and regularly move funds from their financial accounts to off- shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

17.     Infringers like Defendant take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat infringement. For example, infringers take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing them to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendant may and do garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and, on information and belief, have sold infringing products to residents of Illinois.

18.     E-commerce store operators like Defendant commonly engage in fraudulent conduct when registering seller aliases by providing false, misleading, and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

19.     E-commerce store operators like Defendant regularly register or acquire new seller aliases for the purpose of offering for sale and selling infringing products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendant to conceal their identities, the full scope and interworking of their infringing operation, and to avoid being shut down.

20.     Upon information and belief, Defendant also deceives unknowing customers by using the LOVE BRACELET Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the Internet looking for websites relevant to consumer searches for Plaintiff's LOVE BRACELET branded products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Store's listings show up at or near the top of relevant search results after others are shut down. As such, Plaintiff also seeks to disable domain names owned by Defendant that are the means by which the Defendant could continue to sell counterfeit products.

21.     Defendant, without authorization or license from Plaintiff, knowingly and willfully used and continues to use the LOVE BRACELET Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the internet. The infringing products are not LOVE BRACELET Products by Plaintiff. Plaintiff did not manufacture, inspect, or package the infringing products and did not approve the counterfeit products for sale or distribution. Each of the Defendant's Internet Stores offers shipping to the United States, including Illinois, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Illinois.

8

22. Defendant's use of LOVE BRACELET Trademarks on or in connection with advertising, marketing, distribution, offering for sale, and sale of infringing products is likely to cause and has caused confusion, mistake, and deception among consumers, including those in Illinois and this Judicial District, and is irreparably harming Plaintiff.

23. Upon information and belief, Defendant will continue to register or acquire listings for the purpose of selling infringing products that infringe upon LOVE BRACELET Trademarks unless preliminarily and permanently enjoined.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

24. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 23.

25. This is a trademark infringement and counterfeit action against Defendant based on their unauthorized use in commerce of counterfeit imitations of federally registered LOVE BRACELET Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The LOVE BRACELET Trademarks are distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the LOVE BRACELET Trademarks.

26. Defendant has sold, offered to sell, marketed, distributed, and advertised, and is still selling, offering to sell, marketing, distributing, and advertising products bearing LOVE BRACELET Trademarks without Plaintiff's permission. *See* **Exhibit 4**.

27. Plaintiff is the exclusive owner of the LOVE BRACELET Trademarks. Plaintiff's U.S. registrations for LOVE BRACELET Trademarks are in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendant has knowledge of Plaintiff's rights in the LOVE

9

BRACELET Trademarks and is willfully infringing and intentionally using the LOVE BRACELET Trademarks in connection with counterfeit items. Defendant's willful, intentional, and unauthorized use of the LOVE BRACELET Trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

28. Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

29. Plaintiff has no adequate remedy at law, and if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

30. The injuries sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's LOVE BRACELET Products.

## COUNT II

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

31. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30.

32. Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

33. By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendant has offered and shipped goods in interstate commerce.

34.     Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendant has and continues to trade on the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendant to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

35.     Defendant knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

36.     By using Plaintiff's trademarks in connection with the sale of counterfeit products, Defendant creates a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product. By its use of Plaintiff's original photographs in association with the offer and sale of the counterfeit products, Defendant seeks to further confuse the relevant public as to the source or sponsorship of its goods by Plaintiff.

37.     Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38.     As a direct and proximate result of Defendant's wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

39.     Plaintiff has no adequate remedy at law and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT IV

### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT (815 ILCS § 510/1, *et seq.*)

40.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 39.

41.     Defendant has engaged in acts violating Illinois law including, but not limited to, causing likelihood of confusion or misunderstanding as to the source of its goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Plaintiff representing that its products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

42.     The foregoing Defendant's acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, *et seq*.

43.     Plaintiff has no adequate remedy at law, and Defendant's conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by this Court, Plaintiff will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A.     That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

i.      Using the LOVE BRACELET Trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with the LOVE BRACELET Trademarks;

ii.      Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under the LOVE BRACELET Trademarks and associated with or derived from the LOVE BRACELET Trademarks;

iii.      Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe the LOVE BRACELET Trademarks;

iv.      Committing any acts calculated to cause consumers to believe that Defendant's counterfeit product is those sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs texts in connection with the offer or sale of counterfeit products;

v.      Further infringing the LOVE BRACELET Trademarks and damaging Plaintiff's goodwill;

vi.      Otherwise competing unfairly with Plaintiff in any manner;

vii.      Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the LOVE

13

BRACELET Trademarks, or any reproduction, counterfeit copy, or colorable imitations thereof;

viii. Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendant's could continue to sell counterfeit product;

ix. Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendant that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the LOVE BRACELET Trademarks, or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the LOVE BRACELET Trademarks; and,

x. Registering any additional domain names that use or incorporate any portion the LOVE BRACELET Trademarks; and,

B. That Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i. Displaying images protected by the LOVE BRACELET Trademarks in connection with the distribution, advertising, offer for sale, and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the LOVE BRACELET Trademarks; and

ii. Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not

14

manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the LOVE BRACELET Trademarks, or any reproduction, counterfeit copy, or colorable imitation thereof; and,

C.     That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant complied with any and all injunctive relief ordered by this Court;

D.     Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces such as: Amazon; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, YouTube, LinkedIn, X; Internet search engines such as Google, Bing, and Yahoo; webhosts for Defendant's Domain Names, and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendant engages in the sale of counterfeit products using the LOVE BRACELET Trademarks; shall:

i.     Disable and cease providing services for any accounts through which Defendant engages in the sale of counterfeit LOVE BRACELET Products using the LOVE BRACELET Trademarks, including any accounts associated with the Defendant  ;

ii.     Disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of infringing counterfeit products using the LOVE BRACELET Trademarks; and,

iii.     Take all steps necessary to prevent links to the Defendant Online Stores from displaying in search results, including, but not limited to, removing links to the Defendant Online store from any search index; and,

15

E.     That Defendant account for and pay to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of the LOVE BRACELET Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.     For Judgment in favor of Plaintiff against Defendant that they have: (a) willfully infringed Plaintiff's trademarks in its federally registered trademark spursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint;

G.     For Judgment in favor of Plaintiff against Defendant for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.     In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the LOVE BRACELET Trademarks;

I.     That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

J.     That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.

Dated: October 3, 2025                      Respectfully submitted,

/s/ James E. Judge
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 W. Washington St., Ste. 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com

16